UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2015 DEC -2  PM 4: 25

CLERK

BY_____
DEPUTY CLERK

NADIA INTERNATIONAL MARKET,       )
                                  )
         Plaintiff,               )
                                  )
    v.                            )    Case No. 5:14-cv-82
                                  )
UNITED STATES OF AMERICA,         )
                                  )
         Defendant.               )

**OPINION AND ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**
(Doc. 15)

Plaintiff Nadia International Market brings this action pursuant to 7 U.S.C.

§ 2023(13) and 7 C.F.R. § 279.7 seeking judicial review of the April 2, 2014 decision by

the United States Department of Agriculture (the "Agency") permanently disqualifying

Plaintiff from the Supplemental Nutrition Assistance Program (the "SNAP Program").

Plaintiff, a food retailer located in Winooski, asserts that the Agency unfairly and

wrongfully permanently terminated its participation in the SNAP Program and deprived it

of its due process rights.

Pending before the court is Defendant United States of America's Motion for

Summary Judgment. (Doc. 15.) Defendant argues that it is entitled to judgment as a

matter of law because there are no genuine issues of material fact with respect to

Plaintiff's violation of SNAP Program regulations and thus the Agency's decision to

permanently disqualify Plaintiff was neither arbitrary nor capricious. Defendant further

contends that the regulatory process and availability of judicial review satisfy Plaintiff's

due process rights. Plaintiff opposes the motion.

The court heard oral argument on August 27, 2015, at which time the court

granted Plaintiff's request to submit additional information through a Statement of

Disputed Facts. On September 17, 2015, Plaintiff submitted a supplemental

memorandum, an affidavit from Plaintiff's owner Yahya Ikhmayyis, and a statement that it objected to paragraphs 4 and 6 of Defendant's Statement of Undisputed Material Facts. Defendant submitted its reply on September 24, 2015, at which time the court took the matter under advisement.

Plaintiff is represented by Jasdeep S. Pannu, Esq. Defendant is represented by Assistant United States Attorney Melissa A. D. Ranaldo.

## I.    The Undisputed Facts.

### A.    The SNAP Program.

The Food and Nutrition Service ("FNS"), a division of the Agency, administers the SNAP Program, which allows qualifying households to receive monthly allotments to purchase eligible food items at authorized retail stores. Qualifying households receive their benefits through plastic Electronic Benefit Transfer ("EBT") cards that function like debit cards.

SNAP Program regulations prohibit authorized retail stores from "trafficking," or exchanging EBT benefits for cash. FNS maintains a national database that records every EBT transaction at every authorized retail store throughout the country. It utilizes the "Anti-Fraud Locator using Electronic Benefit Retailer Transactions" ("ALERT") computer program to identify statistically unusual EBT transaction patterns and monitor compliance with SNAP Program regulations. Based on the contents of an ALERT report, FNS may open an administrative case, commence an investigation, and initiate an enforcement action against an authorized retail store. Enforcement actions may result in permanent disqualification from the SNAP Program.

### B.    The FNS Investigation and the Final Agency Decision.

Since November of 2010, Plaintiff has participated in the SNAP Program in the course of operating as an authorized retail store in Winooski, Vermont. In 2012, FNS commenced an investigation after Plaintiff's transactions appeared in ALERT reports from August 2012 through October 2012. The ALERT reports identified five categories of statistically unusual EBT transactions: (1) forty-two transactions ending in the same-cents value; (2) twenty-seven rapid sets of purchases (fifty-four total transactions) of

2

multiple items by different households with timeframes ranging from fifty-one seconds to two minutes and fifty-one seconds between transactions; (3) twenty-eight rapid and repetitive transaction sets (fifty-four total transactions amounting to $4,416.03) involving the same household with timeframes between transactions ranging from fifty seconds to twenty-two hours and fifty-one minutes; (4) thirty-six transaction sets by the same household that depleted the majority of monthly benefits in timeframes ranging from one minute and forty-one seconds to four hours and fifty-four minutes; and (5) fifty-two high-dollar transactions ranging from $172.13 to $552.99 and totaling $13,777.17 that the ALERT program "considered to be excessively large given the size and inventory of the store." (AR 51-58, 63-69, 258-260.)

During the course of its investigation, FNS compared Plaintiff's EBT transactions with other similarly-sized authorized retail stores in Vermont. From August 2012 through October 2012, twenty-two stores were operating within a one-mile radius of Plaintiff, and twenty-eight stores were located within a one-to-two mile radius. The average EBT transaction at similarly-sized authorized retail stores within a one-to-two mile radius was $27.56, while Plaintiff's average EBT transaction was $40.18. For example, from August through October of 2012, Banadir Market, which is zero miles from Plaintiff and sells a comparable amount and variety of halal foods at similar prices, had average monthly EBT transactions of $6,895.50. During the same time period, Winooski Halal Store, which also sells a comparable amount and variety of halal food at similar prices and is located half a mile from Plaintiff, had average monthly EBT transactions of $5,054.69. Plaintiff's average monthly EBT transaction total of $16,949.00 was approximately 2.5 times Banadir Market's average and 3.35 times Winooski Halal Store's average.

On October 16, 2012, a FNS field officer inspected Plaintiff's store, photographed the interior and exterior, and observed inventory, stock, pricing, the checkout area and process, and its physical layout. The FNS field officer reported that Plaintiff had one point-of-service ("POS") device, one cash register, no optical scanners, no conveyor belts, approximately ten hand-held shopping baskets, no shopping carts, two employees,

3

and a checkout counter that was approximately four feet by three feet. Plaintiff did not sell hot food, sandwiches, or cold cuts and had no promotional pricing, specials, or packaged items. With the exception of lamb by the pound, Plaintiff did not sell bulk items. The three most expensive items in the store that qualified as eligible for the SNAP Program were a forty kilogram bag of semolina for $69.00, Nestle Instant Cream for $29.99, and lamb by the pound at $6.00 per pound, and the price of most items ended in ninety-nine cents. The FNS field officer spoke to Ahmed Arif, the store clerk, who stated that Mr. Ikhmayyis occasionally extends credit to a few customers but was unable to produce a ledger of such transactions. Based on the results of its site visit, the comparison to similar stores, and the ALERT reports, FNS determined that Plaintiff was engaged in trafficking of EBT benefits.

On November 28, 2012, the Operations Division of FNS notified Mr. Ikhmayyis in writing that Plaintiff had violated the SNAP Program regulation prohibiting trafficking based on EBT transactions that "establish[ed] clear and repetitive patterns of unusual, irregular, and inexplicable [SNAP Program] activity for your type of firm." (Doc. 15-2 at 1.)[1] The letter further informed Mr. Ikhmayyis that FNS was considering permanent disqualification from the SNAP Program and invited him to submit evidence in Plaintiff's defense.

On November 30, 2012, Mr. Ikhmayyis, through his friend and interpreter Wafic Faour, contacted Program Specialist David Dombroski by telephone. On December 1, 2012, he contacted Mr. Dombroski by letter. In both communications, Mr. Ikhmayyis insisted that the EBT transactions noted in the charge letter were the result of his practice of extending credit to customers, including allowing partial payment of credit balances which resulted in large even-dollar transactions. Mr. Ikhmayyis also asserted that he rounded transaction totals to the nearest dollar in accordance with Iraqi custom. Mr.

---

[1] The November 28, 2012 letter to Mr. Ikhmayyis was inadvertently omitted from the Administrative Record and was thus attached to Defendant's Motion for Summary Judgment as Exhibit A.

Ikhmayyis requested a grace period to resolve the credit accounts and submitted a 90-page credit ledger that he purportedly kept at the store.

On December 19, 2012, FNS again notified Mr. Ikhmayyis in writing that Plaintiff was being charged with trafficking and repeated the five categories of suspicious EBT transactions. FNS attached the ALERT reports upon which the charges were based and the EBT data for every transaction identified. FNS informed Mr. Ikhmayyis that he could provide documentation for consideration prior to issuance of a final decision; that he could request a Civil Money Penalty ("CMP") in lieu of disqualification; and that if he requested a CMP, he would need to establish that Plaintiff qualified for one. On December 22, 2012, Mr. Ikhmayyis, through Mr. Faour, requested in writing that the Administrative Review Branch review Plaintiff's case. He stated that he had a limited ability to speak and understand English and asked "what [Plaintiff] must do to be in compliance with SNAP regulations." (AR 196.) On December 27, 2012, Administrative Review Officer Lorie Conneen sent Mr. Ikhmayyis a letter, requesting any additional information in support of Plaintiff's position and advising that in the absence of information establishing the grounds on which Mr. Ikhmayyis was seeking review, his request for review would be denied.

On January 8, 2013, Matthew Daly, Esq., Plaintiff's attorney at that time, requested additional time to submit information in support of Plaintiff's position. On January 8, 2014, Mr. Daly submitted a letter to Ms. Conneen including an affidavit from Mr. Ikhmayyis, a copy of the letter from Mr. Faour to Mr. Dombroski, a letter from David H. Angolano, CPA, Plaintiff's accountant, and copies of Plaintiff's original bookkeeping records. Mr. Ikhmayyis averred that Plaintiff's customers were international refugees, and that Plaintiff provided them with customary and specialty products. He repeated that he has a limited understanding of English, which made it difficult to understand the SNAP Program's regulations. Mr. Ikhmayyis stated that Plaintiff never intended to violate the SNAP Program's regulations and that any violation was inadvertent.

5

Mr. Angolano reviewed the transactions listed in the charge letter and the ALERT reports as well as Plaintiff's ledger books. He stated that he found it difficult to reconcile Plaintiff's ledger with the EBT transaction records, although at least three of the transactions appeared to have been made against credit accounts. Mr. Angolano noted that Plaintiff did not have any cash register receipts to support its sales and opined that three of the transactions presented "major problem[s]" because they were separated by seconds. (AR 216.) Mr. Angolano thus recommended that Mr. Ikhmayyis provide the Agency with "a written explanation of what transpired, along with back up for the three [transactions] identified in the ledgers[.]" *Id.*

On April 2, 2014, the FNS Administrative Review Branch notified Plaintiff that it was sustaining the FNS Operations Division's recommendation to permanently disqualify Plaintiff from the SNAP Program based on its conclusion that it was "more likely true than not true that [SNAP P]rogram violations did, in fact, occur as charged." (AR 269) (the "Final Agency Decision"). Plaintiff was further informed that the Administrative Review Officer considered the investigative and administrative records, which formed the basis of the Operations Division's recommendation, as well as Plaintiff's subsequent explanations and submissions. In addition, FNS notified Plaintiff that it had determined that it was not eligible for a CMP under the regulations because Plaintiff had not timely requested or provided documentation or evidence to support its eligibility.

## II.    The Disputed Facts.

Plaintiff disputes whether FNS maintains a national database which records all EBT transactions at every qualified retail store throughout the United States. It is also disputed whether the ALERT program identifies statistically unusual EBT transactions in order to detect fraud or SNAP Program violations. Plaintiff contends that "Farmer's Markets are allowed to round to the nearest dollar and are not subject to the same automated electronic monitoring[,]" which it asserts "has a discriminatory effect on minority owned businesses[.]" (Doc. 30 at 2.) Plaintiff cites no evidence in support of these contentions and thus fails to comply with the requirements of Fed. R. Civ. P. 56 and

Vermont Local Rule 56.[2]  Accordingly, the court disregards them when considering Defendant's motion.

As part of Plaintiff's post-hearing supplemental briefing, Mr. Ikhmayyis submitted an affidavit stating he "frequently rounded the totals due on customer purchases to the nearest dollar" and "frequently allowed customers to make purchases on credit so that they could buy in bulk[.]"  (Doc. 30-1 at 1.)  Mr. Ikhmayyis provides no business records in support of these contentions, however that omission goes to the evidentiary weight of his statements under oath, rather than their admissibility.  *See Degelman Indus. Ltd. v. Pro-Tech Welding & Fabrication, Inc.*, 2011 WL 6754065, at *1 (W.D.N.Y. June 8, 2011) (considering affidavit concerning party's "own beliefs and recollections" on motion for summary judgment and noting "[t]he absence of other evidence to corroborate [party's] recollection goes towards the weight to be accorded to his [a]ffidavit, not its admissibility").

## III.  Conclusions of Law and Analysis.

### A.  Summary Judgment Standard of Review.

Summary judgment must be granted when the record shows there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).  "A fact is 'material' . . . when it 'might affect the outcome of the suit under the governing law[,]'" and "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Factual disputes that are irrelevant or unnecessary will not be counted.")).  "If, as to the issue on which summary

---

[2] Vermont Local Rule 56(b) states that "[a] party opposing summary judgment . . . must provide a separate, concise statement of disputed material facts."  Subsection (c) further requires that the non-movant's statement "must be supported as required by Fed. R. Civ. P. 56(c)[,]" which requires the non-movant cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]"  Pursuant to Fed. R. Civ. P. 56(e)(2), all material facts in the movant's statement of undisputed facts are deemed to be admitted unless controverted by the opposing party's statement.

judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004) (internal quotation marks omitted).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. [Rather], the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal quotation marks, citations, emphasis, and footnotes omitted).

### · B.    Judicial Review of a Final Agency Determination.

A store owner aggrieved by a final Agency determination "may obtain judicial review thereof by filing a complaint against the United States in the United States court for the district in which it resides or is engaged in business . . . requesting the court to set aside such determination." 7 U.S.C. § 2023(a)(13). Judicial review of permanent disqualification from the SNAP Program is "a trial *de novo* . . . in which the court shall determine the validity of the questioned administrative action in issue[.]" *Id.* at § 2023(a)(15); *see also Ibrahim v. United States*, 834 F.2d 52, 53 (2d Cir. 1987) ("[T]he Food Stamp Act requires the district court to reexamine the [A]gency's decision on a fresh record, rather than determining whether the administrative decision was supported by substantial evidence. . . . [S]uch review afford[s] appellant due process."). Although the statute:

> provides no further guidance regarding how the trial should proceed or
> which party bears the burden of proof[,] . . . in a trial de novo under § 2023,

8

> other circuits have held consistently that, given the nature of the statutory
> scheme, a store owner who seeks to set aside an [A]gency action bears the
> burden of proof.

*Fells v. United States*, 627 F.3d 1250, 1253 (7th Cir. 2010) (collecting cases holding store owner bears burden of proof); *see also Redmond v. United States*, 507 F.2d 1007, 1011-12 (5th Cir. 1975) ("[B]y requiring the aggrieved store to file a complaint in the district court requesting the court to set aside the [A]gency determination, the Act casts the burden of being the plaintiff on the aggrieved store with all of the usual responsibilities of a plaintiff in obtaining relief from a court, including the burden of proving facts to show that he is entitled to relief. In other words, the [A]gency action stands, unless the plaintiff proves that it should be set aside").

The applicable standard of proof is by a preponderance of the evidence. *See Ibrahim*, 834 F.2d at 53 (concluding "the district court must reach its own factual and legal conclusions based on the preponderance of the evidence") (internal quotation marks omitted). "[S]ummary judgment has been held to be appropriate on *de novo* judicial review of a disqualification of a retail food store from participating in the [SNAP Program] if no genuine issue of material fact exists." *Kassem v. United States*, 2003 WL 21382906, at *2 (W.D.N.Y. Apr. 15, 2003) (internal quotation marks omitted); *see also Nagi v. United States*, 1997 WL 252034, at *2 (S.D.N.Y. May 14, 1997) (granting summary judgment and affirming permanent disqualification where no disputed facts existed).

### 1.   Whether Plaintiff Has Established by a Preponderance of the Evidence that It Did Not Engage in Trafficking.

The Agency asserts that it is entitled to judgment as a matter of law because Plaintiff fails to establish by a preponderance of the evidence that it did not engage in trafficking. Plaintiff does not contest the validity of the ALERT reports, the comparison of Plaintiff's average monthly EBT transactions with the averages of comparable stores within a two mile radius, or the FNS field officer's site visit and report. Accordingly, the court "consider[s] the[se] fact[s] undisputed for purposes of the motion[.]" Fed. R. Civ. P. 56(e)(2). Plaintiff nonetheless argues that facts in the Administrative Record do not

9

support the conclusion that it trafficked EBT benefits in violation of SNAP Program regulations.

The governing statute and regulation permit the Agency to base its final determination of SNAP Program violations on analysis of EBT transactions reports, redemption data analysis, and a field officer's report. *See* 7 U.S.C. § 2021(a)(2) (allowing FNS to disqualify an authorized retail store based on "on-site investigations, inconsistent redemption data, or evidence obtained through a transaction report under an electronic benefit transfer system"); 7 C.F.R. § 278.6(a) (same). Courts have recognized that the Agency may rely on these forms of evidence as well. *See, e.g.*, *Young Choi Inc. v. United States*, 639 F. Supp. 2d 1169, 1179 (D. Haw. 2009) ("The law is clear that FNS may base its finding of a violation on analysis of EBT transaction reports or on-site store surveys").[3] The Agency thus need not catch a store "red-handed" to support its determination of trafficking. *See Kahin v. United States*, 101 F. Supp. 2d 1299, 1303 (S.D. Cal. 2000) (rejecting argument that "summary judgment is inappropriate without evidence of 'red-handed' violations").

In this case, the Agency submitted ALERT reports containing over two hundred statistically unusual EBT transactions that comprise five categories of anomalies based on Plaintiff's sales between August and October of 2012. The ALERT program detected forty-two transactions ending in an even-dollar amount, despite the fact that the price of most items in Plaintiff's store end in ninety-nine cents. The number of even-dollar transactions over the investigative period was thus indicative of trafficking because the number failed to correspond with Plaintiff's actual pricing. *See Afr. Grocery Store v. United States*, 2008 WL 782731, at *5 (E.D. Mo. Mar. 20, 2008) (opining that thirty-two

---

[3] *See also Kahin v. United States*, 101 F. Supp. 2d 1299, 1303 (S.D. Cal. 2000) (granting summary judgment in Agency's favor where FNS "relie[d] on the irregular and inexplicable patterns in the EBT data, as well as on the sheer volume of transactions compared to inventory of store goods, to find conclusive evidence of [the store's] trafficking of food stamps"); *Rockland Convenience Store v. United States*, 2011 WL 5120410, at *8 (D. N.H. Oct. 27, 2011) ("It is indisputable . . . that a 'court may grant the government's motion for summary judgment based on evidence from transactions reports[]'") (quoting *Young Choi Inc. v. United States*, 639 F. Supp. 2d 1169, 1178 (D. Haw. 2009)).

"even-dollar food stamp transactions revealed an inordinate and disproportionate number of such transactions given the variety of product-pricing in the store").

Although Plaintiff asserts that Mr. Ikhmayyis frequently rounds prices for customers in accordance with Iraqi custom and that Plaintiff's customers pay credit balances in even-dollar amounts, Plaintiff has not identified any customers or ledger entries to support this argument. Moreover, Plaintiff's accountant was able to attribute only three of the transactions listed in the ALERT reports to charges made against credit accounts. Plaintiff thus fails to sustain its burden of proof to explain the excessive number of even-dollar amount transactions. *See Rockland Convenience Store v. United States*, 2011 WL 5120410, at *10 (D. N.H. Oct. 27, 2011) (granting summary judgment where plaintiff "failed to produce evidence sufficient to create a genuine issue of material fact in support of its claim that all of its same-cents transactions beyond the national norm resulted from the extension of credit rather than trafficking in [EBT] benefits").

As further evidence of trafficking, the Agency cites ALERT reports identifying twenty-seven inordinately rapid sets of purchases of multiple items by different households with timeframes ranging from fifty-one seconds to two minutes and forty-one seconds and averaging over two hundred dollars per transaction. The FNS field officer determined that Plaintiff had only one POS device, one cash register, no optical scanners, no conveyor belts, approximately ten hand-held shopping baskets, no shopping carts, two employees, and a single checkout counter measuring approximately four feet by three feet. The attributes of Plaintiff's store and its operations therefore support a conclusion that these purchasing patterns are suspicious because it is arguably impossible for different households to rapidly purchase large quantities of items in light of Plaintiff's limited means of processing this type of order. *See McClain's Mkt. v. United States*, 411 F. Supp. 2d 772, 774 (N.D. Ohio 2005) (identifying "multiple withdrawals totaling excessively large amounts by two or more households within an unusually short time frame" as one factor in trafficking determination where store had "only two short very narrow aisles[] . . . a small check-out area where a few groceries at a time could be placed on the counter[] . . . a hand-held optical scanner . . . [and] no shopping baskets or carts").

In addition, it is unlikely that rapid transactions for different households would approximate two hundred dollars without the sale of highly priced SNAP-eligible food items, of which Plaintiff's store offered only three. *See id.* (considering store's dearth of highly priced food items, "fresh or frozen meats, frozen fruits or vegetables, or meats or cheeses by the pound" when assessing "charges of multiple withdrawals totaling excessively large amounts by two or more households within an unusually short time frame"); *see also Afr. Grocery Store*, 2008 WL 782731, at *5 (noting suspicious nature of "series of . . . transactions . . . involving different recipient households within elapsed time-frames which are likely impossible due to the store's limited inventory of eligible food products and logistical factors dealing with the store's checkout procedures").

The fifty-four transactions reflecting multiple highly priced purchases with high dollar transaction amounts by the same household in timeframes ranging from fifty seconds to twenty-two hours and fifty-one minutes are also indicative of trafficking because Plaintiff did not have a wide variety of highly priced food items available. It is thus unlikely that, without shopping carts and with only a few handheld baskets, a household could carry the items necessary to reach these high dollar amounts. Likewise, without a large checkout area, a conveyor belt, or multiple cash registers or POS devices, Plaintiff's clerks could not process multiple high purchase sales containing multiple items in rapid succession.

Correspondingly, the thirty-six transaction sets depleting the majority of a household's monthly benefits in a short period of time are indicative of trafficking because they, again, would require sizable one-time purchases that are inconsistent with Plaintiff's ability to process them in rapid succession. *See Kahin*, 101 F. Supp. 2d at 1300 (recounting FNS evidence of trafficking, including "a high number of balance depletion transactions" by one household); *Young Choi Inc.*, 639 F. Supp. 2d at 1178 (granting summary judgment in part because plaintiff failed to raise material issues of fact as to "transactions that depleted customers' available food stamp balances"). Although Plaintiff claims these transactions reflect customers paying off their credit balances, it offers no records in support of that claim. *See Young Choi Inc.*, 639 F. Supp.

2d at 1179 (rejecting plaintiff's "general justifications for large expenditures" where plaintiff "present[ed] no facts directly rebutting the observations and analysis" of the Agency).

With respect to the fifth category of statistically unusual EBT transactions, Plaintiff's customers conducted a disproportionately large number of high-dollar transactions during the three month investigation. In particular, the ALERT reports highlighted fifty-two separate transactions ranging from $172.13 to $552.99 and totaling $13,777.17, which appear excessive in light of Plaintiff's size, inventory, and pricing. In addition, Plaintiff's average monthly EBT transactions from August to October of 2012 were significantly higher than comparable stores located nearby and thus also indicative of trafficking EBT benefits. *See Hanna v. United States*, 2007 WL 1016988, at *6 (E.D. Mich. Mar. 30, 2007) (rejecting plaintiff's contention that the large quantity of high dollar transactions was due to "the sorts of customers who frequent his store" and the occasional sale of "meat bundles").

In summary, to dispute the Agency's evidence, Plaintiff "presents no explanation of any of the . . . transactions asserted against [P]laintiff, but merely presents general justifications" for the statistically unusual EBT transactions. *McClain's Mkt.*, 411 F. Supp. 2d at 777. "Since only one instance of . . . trafficking is sufficient to establish a violation, the fact that Plaintiff has failed to explain these transactions or raise any material issues of fact with respect to them indicates that Plaintiff has failed to meet [its] burden." *Kahin*, 101 F. Supp. 2d at 1303. Even when examined in the light most favorable to Plaintiff, a preponderance of the evidence establishes that Plaintiff was engaged in trafficking of EBT benefits. Summary judgment in Defendant's favor is thus warranted. *See* Fed. R. Civ. P. 56(a).

## 2. Whether Plaintiff's Permanent Disqualification Was Arbitrary and Capricious.

Plaintiff contends that the evidence in the record only supports a conclusion that it extended credit to its customers in violation of the SNAP Program regulation. On that basis, Plaintiff requests that the court vacate the Agency's sanction and impose a one year

suspension. In response, Defendant argues that the Agency's decision to permanently disqualify Plaintiff from the SNAP Program was neither arbitrary nor capricious and reflects the mandatory statutory penalty for EBT benefit trafficking.

The Agency's action is arbitrary and capricious if it is "unwarranted in law or without justification in fact." *Willy's Grocery v. United States*, 656 F.2d 24, 26 (2d Cir. 1981), *cert. denied*, 454 U.S. 1148 (1982) (internal quotation marks omitted). If the Agency has followed its guidelines,[4] the reviewing court may not overturn its decision as arbitrary and capricious. *Id.* "Whether the imposition of a penalty by . . . FNS [is] arbitrary or capricious is a matter of law appropriately determined on a motion for summary judgment." *Lugo v. United States*, 2009 WL 928136, at *3 (S.D.N.Y. Mar. 30, 2009) (internal quotation marks omitted); *see also 183 Bronx Deli Grocery Corp. v. United States*, 2012 WL 2359664, at *4 (S.D.N.Y. June 18, 2012) (concluding court must determine whether Agency's sanction was "'unwarranted in law or without justification in fact'").

Permanent disqualification from the SNAP Program is mandated when an authorized retail store is found to be engaged in trafficking. *See* 7 U.S.C. § 2021(b)(3)(B) (stating disqualification "*shall* be . . . permanent upon . . . the first occasion of . . . trafficking") (emphasis supplied). In this case, having determined by a preponderance of the evidence that Plaintiff engaged in trafficking from August to October of 2012, the Agency properly permanently disqualified Plaintiff from the SNAP Program in compliance with the governing statute and regulation which require permanent disqualification on "the first occasion" of trafficking.[5] *Id.*

---

[4] Plaintiff does not argue that the Agency failed to follow its regulations and guidelines during its initial investigatory or the subsequent review process. Plaintiff thus concedes that he "was afforded the full range of procedural protections to which [it] was entitled . . . including an initial review at which he was able to make submissions, and a subsequent administrative review[.]" *Lugo v. United States*, 2009 WL 928136, at *3 (S.D.N.Y. Mar. 30, 2009).

[5] Pursuant to 7 U.S.C. § 2023(a)(16), "[i]f the court determines that [an] administrative action is invalid, it shall enter such judgment or order as it determines is in accordance with the law and the evidence." Having concluded by a preponderance of the evidence that Plaintiff was engaged

The regulation cited by Plaintiff in support of its argument that a lesser sanction was available but not explored, 7 C.F.R. § 278.6(e)(4)(ii), is inapplicable based on the facts of this case.  Section 278.6(e)(4)(ii) authorizes a one year disqualification if a qualified retail store "has accepted food stamp benefits in payment for items sold to a household on credit."  Here, the Agency charged Plaintiff with trafficking EBT benefits and Plaintiff's permanent disqualification arose out of that offense.  To the extent that Plaintiff argues that Defendant should have charged Plaintiff differently and issued a CMP in lieu of permanent disqualification, Plaintiff failed to both timely request a CMP and provide the factual evidence upon which a CMP could be granted.

Based on the foregoing, even when examined in the light most favorable to Plaintiff, the undisputed facts establish that the Agency's sanction in this case was not arbitrary and capricious and complied with the statute governing penalties for trafficking EBT benefits.  *See* 7 U.S.C. § 2021(b)(3)(B).  In such circumstances, the court has no authority to vacate Plaintiff's permanent disqualification from the SNAP Program and substitute its own view of an appropriate sanction.

## CONCLUSION

For the foregoing reasons, the court GRANTS Defendant's Motion for Summary Judgment.  (Doc. 15.)

SO ORDERED.

Dated at Burlington, in the District of Vermont, this ___2nd___ day of December, 2015.

Christina Reiss, Chief Judge
United States District Court

---

in trafficking, the mandatory penalty for which is permanent disqualification, *see* 7 U.S.C. § 2021(b)(3)(B), the court lacks the authority to impose an alternative penalty.